RACHEL E. KAUFMAN (Cal. Bar No. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN BANCARD, LLC and INTEGRATED PAYMENT TECHNOLOGIES LLC,<br><br>Defendants. | Case No. 2:20-CV-03656-FMO-RAO<br><br>FIRST AMENDED COMPLAINT FOR:<br>1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)<br><br>Class Action<br><br>DEMAND FOR JURY TRIAL |

- 1 -
FIRST AM. COMPL.
*Fabricant v. North American Bancard, LLC, et. al.*

Plaintiff TERRY FABRICANT ("Plaintiff"), by his undersigned counsel, for this class action complaint against Defendants NORTH AMERICAN BANCARD, LLC and INTEGRATED PAYMENT TECHNOLOGIES LLC and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Defendants"), alleges as follows:

## I. INTRODUCTION

1. <u>Nature of Action</u>. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC*, 132 S. Ct. 740, 745 (2012).

## II. PARTIES

2. Plaintiff Terry Fabricant is an individual residing in California, in this District, that operates a business called California Sliding Door Repair.

3. North American Bancard, LLC is a Delaware company with its principal place of business in Michigan. North American Bancard is registered in California and has a registered agent of CT Corporation System. North American Bancard provides merchant services for and solicits companies in California, including in this District. In fact, in an effort to expand its footprint in California, in 2017, North American Bancard acquired a California based competitor, Total Merchant Services, making it the seventh largest processor in terms of merchant locations in North America, processing nearly $50 billion annually.[1]

4. Defendant Integrated Payment Technologies LLC is a Georgia company headquartered in Georgia. It was hired by North American Bancard to make automated telemarketing calls, including to companies in California, such as

---

[1] https://www.dbusiness.com/daily-news/troys-north-american-bancard-holdings-acquires-total-merchant-services/

those made to the Plaintiff. Integrated Payment Technologies regularly conducts business in this District, including through the making of telemarketing calls to solicit the business of California companies, as it did with the Plaintiff's business *California* Sliding Door Repair.

### III. JURISDICTION AND VENUE

5. <u>Jurisdiction</u>. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because they arise under a law of the United States: 47 U.S.C. § 227.

6. <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over Defendants because the challenged calls at the heart of this case were directed into California, to Plaintiff's California area code cell phone number, to solicit the business of Plaintiff's California company, *California* Sliding Door Repair, as part of Defendants overall business of soliciting and providing merchant services to companies in California.

7. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff resides in this District and the challenged calls at the heart of this case were directed by Defendants into this District regarding merchant services for a business located in this District.

### IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq*.

9. Relevantly, the TCPA provides private rights of action for two types of telemarketing-related conduct.

10. First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system or pre-recorded message without the prior express written consent of the called party.

11. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(8).

12. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(i)(A-B).

13. A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

14. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited April 20, 2020). YouMail estimates that 2019 robocall totals exceeded 60 billion. *See id.*

V.         FACTUAL ALLEGATIONS

15. North American Bancard is a payment processor provider for businesses, including businesses in California.

16. However, North American Bancard's contact with the potential new customers is limited, and the telemarketing is conducted by third parties, such as Integrated Payment Technologies.

17. In fact, Integrated Payment Technologies's website, www.integratedpmt.com, redirects to a North American Bancard website.

18. Defendants' strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

19. Recipients of these calls, including Plaintiff, did not consent to receive them.

The Automated Telemarketing Call From Defendants

20. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21. Plaintiff's telephone number, (818)-266-XXXX, is registered to a cellular telephone service, which is the number he received the call on while physically present in California.

22. The Plaintiff received an automated telemarketing call from Integrated Payment Technologies on behalf of North American Bancard on February 26, 2020.

23. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

24. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

25. The dialing system used by Integrated Payment Technologies also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

26. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

27. As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

28. The dialing system can do this by inputting a straightforward computer command.

1  29. Following that command, the dialing system will sequentially dial
2  numbers.
3  30. First, it would dial a number such as (555) 000-0001, then (555) 000-
4  0002, and so on.
5  31. This would be done without any human intervention or further effort.
6  32. As a result, the system that sent automated calls to Plaintiff qualifies
7  as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).
8  33. Mr. Fabricant engaged the telemarketer during the telemarketing call
9  to identify them.
10 34. The salesperson confirmed for the Plaintiff that they were offering
11 North American Bancard services for Plaintiff's California business, *California*
12 *Sliding Door Repair*.
13 35. He did so by providing the url to the IPG website redirecting to a
14 North American Bancard website together with a loan application in an email.
15 36. He did so with the awareness that the business he was soliciting was a
16 California business called *California* Sliding Door Repair.
17 37. The call was not necessitated by an emergency.
18 38. Plaintiff's privacy has been violated by the above-described
19 telemarketing robocalls from, or on behalf of, Defendants. The calls were an
20 annoying, harassing nuisance.
21 39. Plaintiff and all members of the Class, defined below, have been
22 harmed by the acts of Defendants because their privacy has been violated, they
23 were annoyed and harassed, and, in some instances, they were charged for
24 incoming calls. The calls occupied their cellular telephone lines, rendering them
25 unavailable for legitimate communication.

## VI. NORTH AMERICAN BANCARD'S LIABILITY AND ITS ARRANGEMENT WITH INTEGRATED PAYMENT TECHNOLOGIES

40. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

41. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[2]

42. In that ruling, the FCC instructed that sellers such as North American Bancard may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

---

[2] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

43. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

44. Integrated Payment Technologies was contractually required to promote North American Bancard products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

45. North American Bancard knew that Integrated Payment Technologies was making automated telemarketing calls.

46. North American Bancard was knowingly and actively accepting the business that originated through the illegal telemarketing calls.

47. By engaging Integrated Payment Technologies to make calls on behalf of its agents to generate new business, North American Bancard "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

48. Moreover, North American Bancard maintained interim control over Integrated Payment Technologies' actions.

49. For example, North American Bancard had absolute control over whether, and under what circumstances, it would accept a customer.

50. Furthermore, North American Bancard had day-to-day control over Integrated Payment Technologies' actions, including the ability to prohibit it from using an ATDS to contact potential customers of North American Bancard. North American Bancard failed to make such an instruction to Integrated Payment

Technologies, and as a result, is liable for Integrated Payment Technologies' conduct.

51. North American Bancard also gave interim instructions to Integrated Payment Technologies by providing the volume of calling and leads it would purchase.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### VII. CLASS ACTION ALLEGATIONS

53. <u>Class Definition</u>. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the following class:

> All persons to whom: (a) Defendants' or a third party acting on their behalf made one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of filing the original complaint in this case and ends at the date of trial.

("Dialer Class")

54. <u>Exclusions</u>. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, the judges to whom this case is assigned and the legal representatives, assignees, and successors and immediate family members of all of the foregoing.

55. <u>Numerosity</u>. The Class is so numerous that joinder of all its members is impracticable. On information and belief, the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

56. <u>Commonality</u>. The key questions driving the outcome of this dispute have the same answers for all Class members. Those questions include, but are not limited to, the following:

    a. Whether Defendants used an ATDS, as defined by *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018);

    b. Whether Defendants purchased batches of leads of prospects who had not consented to be called by it;

    c. Whether North American Bancard is vicariously liable for the conduct of Integrated Payment Technologies;

    d. Whether Defendants' violations of the TCPA were knowing and willful; and

    e. Whether Defendants should be enjoined from engaging in similar telemarketing in the future.

57. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims and those of the Class arise out of the same course of conduct by Defendants and are based on the same legal and remedial theories.

58. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable counsel with experience in TCPA class litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Class.

59. <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising

from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important advantages, including judicial economy.

60. <u>Superiority</u>. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are dwarfed by the cost of prosecution. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated and because the TCPA lays down bright-line standards for liability and damages. Class treatment is superior to thousands of individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

61. Only 1 in 7 million robocalls results in the filing of a federal TCPA suit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ (4,392 TCPA complaints). Except to the extent that they are remedied by class actions, the other 6,999,999 are made with impunity.

62. <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive

1 relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

63. <u>Notice</u>. Plaintiff anticipates that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from Defendants' calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses). Plaintiff anticipates that Class counsel will notify Class members in writing at such addresses.

## VIII. FIRST CLAIM FOR RELIEF

**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Dialer Class)**

64. Plaintiff and the proposed Dialer Class incorporate the foregoing allegations as if fully set forth herein.

65. Integrated Payment Technologies placed an automated call for telemarketing purposes for North American Bancard to Plaintiff's and Dialer Class Members' cellular telephone numbers.

66. Integrated Payment Technologies did so using an automatic telephone dialing system.

67. Defendants did so without the prior express written consent of Plaintiff and Dialer Class Members.

68. Plaintiff and Dialer Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(b)(3).

69. Plaintiff and Dialer Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call because Defendant's violations were knowing and/or willful.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Defendants as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that actions complained of herein by Defendants and/or its affiliates, agents, or related entities violate the TCPA;

E. An order enjoining Defendants and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award to Plaintiff and the Class of attorney's fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just and proper.

## X. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 20th day of May, 2020.

By: */s/ Rachel E. Kaufman*
RACHEL E. KAUFMAN
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com
*Attorney for Plaintiff Terry Fabricant and the Proposed Class*